D. P. JOHNSON v. J. A. BRANT, *et al.*

1. GARNISHMENT PROCEEDINGS, *for What Purpose do not Lie.* Garnishment proceedings do not lie to enforce preëxisting equities or liens in favor of the plaintiff and against the intended garnishee or some third person who may file an interplea in the case, claiming the attached property, money or credits.

2. ———— *Property Bound by.* Garnishment proceedings bind such property, money and credits, and only such, as belong to the defendant, and are not exempt from attachment and garnishment, and are in the hands of the garnishee or owing by him to the defendant, at the time when the garnishee notice is served upon the garnishee.

3. GARNISHMENT LIEN, *Extent Of.* A plaintiff in a garnishment proceeding can' never obtain a garnishment lien upon more in the hands of the garnishee than the defendant owns, and where the property or fund is exempt from judicial process, he cannot obtain a lien upon even that much.

*Error from Franklin District Court.*

THE opinion states the nature of the action, and the facts. On July 5, 1886, judgment was rendered for the plaintiffs *Brant & Beachy,* and against the interpleader *Johnson,* who brings the case here.

*Mechem & Smart,* for plaintiff in error.
*J. K. Goodin,* and *J. W. Deford,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This proceeding in error is brought to this court to reverse an order of the district court made upon an interplea filed by D. P. Johnson under § 1 of chapter 137 of the Laws of 1877. (Comp. Laws of 1885, ¶ 3839.) The action was one in which J. A. Brant and U. M. Beachy, doing business under the firm-name of Brant & Beachy, were the plaintiffs, and W. A. Clark was the defendant. Brant & Beachy commenced their action against Clark for $978.48 for services rendered by them as agents in the sale of lands for Clark and others, and in such action obtained an order of attachment against the property of Clark, upon the ground that Clark

was a non-resident of the state of Kansas. They also filed an affidavit for garnishment, and gave notice to the officers of the Goodin Bank of Ottawa, for the purpose of garnishing the bank. The notice contained all that was necessary in such a notice, and a great deal more. By the terms of the notice it was not only attempted to garnish the bank and its officers with respect to all property and credits held by them at the time of the service of the notice and belonging to Clark, but it was also attempted to garnish the bank with respect to other property and credits belonging to other persons, and such property and credits also as might come into their hands or debts that might be owing by them subsequently to the service of the notice of garnishment. C. W. Goodin, president of the bank, answered as garnishee for the bank and its officers; and the answer shows that the bank held a large amount of money and notes not belonging to Clark, but belonging to Richmond and Titus, and of course "covered by the notice of the garnishment." The court then found that a large amount of money and notes "was covered by notice of the garnishment," and the bank was ordered to retain $1,100 thereof in its hands subject to the event of the suit and the further order of the court. Afterward, and on September 7, 1885, D. P. Johnson filed his interplea. He claimed to own the aforesaid property and credits himself. Brant & Beachy answered to this interplea, and Johnson replied. Upon these pleadings a trial was had before the court without a jury, and the court made special findings of fact and conclusions of law, and stated them separately. The findings of fact are so voluminous that they cannot well be given in this opinion. We will attempt, however, to state the substance of them so far as they are material and necessary for the considerations of the questions really involved in this case. Clark, as the agent of Underwood, Clark & Co., held the legal title to and owned a large amount of land upon which Johnson held a mortgage for $20,000. Clark owed to Brant & Beachy the amount for which they sued him in this action, and he agreed to pay the same out of the proceeds of the sales of the land when paid. Brant & Beachy procured

such sales; and afterward, but before such proceeds were paid, informed Johnson that Clark owed them this amount, and Johnson agreed that he would see that it was paid, stating : "I will make the claim mine, and see it paid." The Goodin Bank was Johnson's agent to receive the money for him on his mortgage, and to perform various other acts for him. Henry Jayne was Clark's agent to receive the purchase-money for the land when paid, and to pay the same to Johnson or to his agents, on Johnson's mortgage. On May 29, 1885, certain of the purchasers paid to Jayne the amount of the purchase-money which they owed, and while he, Jayne, still had it in his possession, Brant & Beachy demanded of him payment of their claim against Clark, but he refused. Jayne then paid the money to the Goodin Bank on Johnson's mortgage, and the money was placed to Johnson's credit; and releases, which had previously been executed by Johnson and placed in the Goodin Bank, releasing the property from Johnson's mortgage, were handed to the purchasers. Brant & Beachy also, at the same time and before and afterward, demanded payment of their claim from the Goodin Bank, but the bank also refused, and they then commenced this action and garnished the bank in about one hour thereafter. There were many other facts found by the trial court, which we deem immaterial to the consideration of the case by us. The trial court also made the following conclusions of law:

"1. That by their agreements with Wilson and his grantees, the plaintiffs acquired a lien upon the funds arising on sales made by them for the payment of their said claims.

"2. Conceding that in the absence of notice the lien of the interpleader under his mortgage was paramount to that of the plaintiffs, still he could waive such priority by parol, and did so waive the same as appears from the 18th finding of fact.

"3. Upon all the facts above stated, the plaintiffs have the superior equity to the fund in controversy, and the same must be held to satisfy any judgment that may be rendered in this action against the defendant W. A. Clark."

The court then, upon its findings and conclusions, rendered the following judgment:

"It is therefore considered by the court here that the claim of the said plaintiffs to the $1,100 garnished and attached in the hands of the Goodin Bank is prior, superior and paramount to that of said intervenor, D. P. Johnson, to said fund, and that he take nothing by his said interplea, and that the plaintiffs recover their costs from Johnson."

The "agreements" mentioned in the first conclusion of law were agreements made by the plaintiffs Brant & Beachy, first with E. E. Wilson, and afterward with Clark, and finally with Johnson, that their claim should be paid from the funds arising from the sales of the land; but how the plaintiffs by such agreements could acquire a lien upon such funds, or how such a lien could be enforced, in a proceeding in attachment and garnishment, it is difficult to understand. A proceeding in garnishment can be maintained only upon the theory that the property attached by such proceeding belongs to the defendant in the action, (which in this case is Clark,) and not to anyone else. The second conclusion of law is also founded upon the theory that the plaintiffs had a lien upon the aforesaid funds, and that while Johnson may have had a paramount lien thereon, still that Johnson by his parol agreement with Brant & Beachy, waived his priority of lien and conferred priority upon the plaintiffs' lien. As before stated, we think the plaintiffs did not have any lien upon these funds, and besides, Johnson's waiver appears to have been wholly by parol and without any consideration whatever; and it was also an agreement to answer for the debt or default of another person. In this connection, however, we might also state that on September 25, 1884, Richmond & Titus, who were Johnson's agents, wrote the following letter to the Goodin Bank, which was also Johnson's agent, which letter reads as follows:

"*L. C. Stine, Cashier Goodin Bank, Ottawa, Kansas*— DEAR SIR: Yours of the 23d at hand. Underwood, Clark & Co. told us they should settle Beachy's claim. Presume that they will do so if they have to. We think it will be arranged, but perhaps they hope to reduce the demand some.

We would prefer to have the whole amount, but if Beachy's claim must be settled, let it be done.    U. C. & Co. will make the amount good to us.

Yours truly,      RICHMOND & TITUS.

We notify U. C. & Co. to-day."

Of course this letter from one agent of Johnson to another agent of Johnson cannot be construed into a contract between Johnson and Brant & Beachy, or as giving to Brant & Beachy a lien upon the funds still in the hands of the purchasers of the real estate but presumably to be paid to the sellers and by them to the mortgagee, Johnson, even if such a lien could be enforced in this kind of proceeding, which it cannot.    The third conclusion of law is that the plaintiffs have the superior equity to the fund in controversy.    Now proceedings in attachment and garnishment do not lie to enforce preëxisting equities or liens in favor of the plaintiffs, whether against the intended garnishee or some third person, as Johnson was, or some one else, but only to attach something subject to attachment and garnishment, belonging to the defendant, and to subject the same to the payment of the plaintiffs' claim.    Plaintiffs never attach their own property or their own equities or liens, but they merely attempt to attach something belonging to the defendant.    If, however, it be supposed that the equity or lien supposed to exist in this case arose simply by virtue of the attachment and garnishment proceedings, then such equity or lien could arise only because the property or fund in the Goodin Bank belonged to Clark when the notice of garnishment was served upon the officers of the bank.    But as we understand, there is no such claim made that such property or fund belonged to Clark at that time, but it is admitted that it belonged to Johnson, and it is claimed by Brant & Beachy that they had and still have a prior and paramount equity or lien to and upon about $1,000 thereof, by reason of previous transactions.    The fund at that time, which belonged to Johnson and was deposited in the Goodin Bank, consisted of something over $8,000 in money and about $6,500 in mortgage notes, and the mortgage was for $20,000.    But certainly whatever may be claimed in this case,

1. Garnishment proceedings, for what purpose do not lie.

the aforesaid fund did not belong to Clark when the service of the notice of garnishment was made upon the bank. When the money was paid to Jayne, who was Clark's agent, who was the agent of Underwood, Clark & Co., it may be said for the purposes of this case that it belonged to Clark, but when Jayne paid it into the Goodin bank on Johnson's mortgage, it then became the property of Johnson, and Clark had no more interest in it than the purchaser of the land who had paid it to Jayne. After that money was paid into the bank, neither Jayne, nor Clark, nor Underwood, Clark & Co., could have maintained an action against Johnson or against the bank to recover it back or to recover any part thereof, and the reason for this is simply that no part of such money belonged at that time to any one of them; and as it did not belong to the defendant Clark, the plaintiffs procured no equity nor lien nor anything else valuable, by virtue of their attempted garnishment. Garnishment proceedings bind just such property, money and credits, and only such, as belong to the defendant and are not exempt from attachment and garnishment, and are in the hands of the garnishee or owing by him to the defendant, at the time when the garnishee notice is served upon the garnishee. (Civil Code, § 206.) At to what and the time when the lien attaches, see *Phelps v. A. T. & S. F. Rld. Co.*, 28 Kas. 165; *Muzzy v. Lantry*, 30 id. 49; *B. & M. R. Rld. Co. v. Thompson*, 31 id. 180. A plaintiff in garnishment proceedings can never obtain a garnishment lien upon more in the hands of the garnishee than the defendant owns, and where the property or fund is exempt from judicial process, he cannot obtain a lien upon even that much.

2. What property bound by garnishment.

3. Limit of lien.

We think that the able and careful district judge who tried this case was in some manner or for some reason misled; and believing the judgment to be erroneous, it will be reversed.

All the Justices concurring.