No. 31,706

W. A. Lewis and R. P. Martin, Assignees for the Benefit of the
Creditors of W. L. Harsha, and W. L. Harsha, *Appellees*, v. R. S.
Barnett and Shell Petroleum Corporation, *Appellants*.

(33 P. 2d 331.)

Opinion filed
June 9, 1934.

*Albert Faulconer, Kirke W. Dale* and *C. L. Swarts*, all of Arkansas City,
for the appellants; *M. E. Grant*, of St. Louis, Mo., of counsel.

*Tom Pringle* and *Harry V. Howard*, both of Arkansas City, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: The appeal in this case involves the right of a
judgment creditor to subject to garnishment an unliquidated claim
of the judgment debtor for damages in tort. The trial court upheld
the garnishment, and the garnishee appeals.

The plaintiffs are the assignees of one W. L. Harsha for the benefit
of creditors. Harsha had, as a merchant, sold goods, wares and mer-
chandise to R. S. Barnett, and the assignees recovered a judgment
against Barnett on an account and on two notes for such merchan-
dise in the sum of $589.24. Such judgment was rendered on Febru-
ary 2, 1931, and no appeal was taken therefrom. On May 25, 1932,
execution was issued thereon, and the sheriff the next day made a
return of "no property found."

Barnett had been in the employ of the Shell Petroleum Corpora-

tion as a painter at its refinery at Arkansas City, Kan., quite regularly from May or June, 1928, to August, 1929. In the month of April, 1932, Barnett was, in the probate court of Cowley county, adjudged to be insane, and his wife, Lula Barnett, was appointed his guardian. On the 23d day of May, 1932, Barnett, by and through Lula Barnett, his guardian, commenced an action against the Shell Petroleum Corporation to recover $40,000 damages by reason of the negligence of the Shell Petroleum Corporation which caused his permanent and total disability. On May 25, 1932, two days after the filing of this action for damages, the plaintiffs, as judgment creditors of Barnett in the other action, filed an affidavit in garnishment against the Shell Petroleum Corporation, and a garnishment summons was regularly served on the petroleum corporation the next day, or three days after the damage action had been commenced. Notice of such garnishment was also served upon the attorneys of record for Barnett in the damage suit.

On June 15, 1932, the petroleum corporation, as garnishee, filed its answer stating that it was in no manner indebted or under liability to the defendant Barnett, and that it had at the time of the service of the garnishment summons and at the time of filing the answer, in its possession or under its control, no real estate and no personal property, effects or credits of any description belonging to the defendant Barnett or in which the defendant had any interest, and that it was in no manner liable as garnishee in said action. A few days later the plaintiffs in the original action filed their exceptions to said answer and gave proper notice thereof. Immediately thereafter correspondence between the attorneys for the plaintiffs and the attorneys for the garnishee ensued to the effect of holding the matter raised by the exceptions to the answer in abeyance until such time as it may be determined whether or not the petroleum corporation will be required to pay the plaintiffs any sum of money, neither party to waive any rights by letting the matter run until the other case is decided.

On November 17, 1932, the guardian of the insane person filed in the probate court an application to compromise the damage suit because of the expense of trial and uncertainty of the result, naming an opportunity and offer to compromise for $1,500. On the same day the application was heard and permission was granted to release the petroleum corporation from all liability and to consent

either to the dismissal of the damage action or the rendition of judgment in the case for the amount of the compromise. On November 16, 1932, the guardian executed a receipt for the $1,500 and a release from all liability, stating therein that it is in satisfaction of a disputed claim and that it shall not be considered as an admission of any liability of any character. On November 30, 1932, judgment was rendered for the guardian for the recovery of $1,500 and costs.

On August 7, 1933, the court heard the exceptions to the answer of the garnishee, at which time the stipulation and court files in the three cases were introduced, and the trial court rendered judgment in favor of the plaintiff assignees and against the garnishee, the petroleum corporation, and denied the new trial asked by the petroleum corporation.

One of the points relied upon by appellees in support of the judgment is in the first letter of the correspondence between the attorneys after the exceptions were filed to the answer of the garnishee, wherein it was stated that the matter be held in abeyance until such time as it may be determined whether or not the petroleum corporation will be required to pay the plaintiff any sum of money. This language would ordinarily mean the giving of effect to the garnishee summons as being served after the rendition of the judgment, instead of being limited by law to the facts as they existed at the time the service of summons was made. But we must read in connection with this statement the further part of the understanding through the correspondence that neither party was to waive any rights by letting the matter run until the other case was decided. The rights of the garnishee under the law might be limited to the facts existing as to indebtedness and possession of property at the time only when the garnishment summons was served. (R. S. 60-941 and 60-954.) In *Johnson v. Brant,* 38 Kan. 754, 17 Pac. 794, it was said:

"Garnishment proceedings bind such property, money and credits, and only such, as belong to the defendant, and are not exempt from attachment and garnishment, and are in the hands of the garnishee or owing by him to the defendant, at the time when the garnishee notice is served upon the garnishee." (Syl. ¶ 2.)

This rule was approved and applied in the case of *Gillette v. Cooper,* 48 Kan. 632, 30 Pac. 13.

Counsel for appellees insist that the garnishee answered under the wrong section of the garnishment statute, having answered under

R. S. 60-945 instead of R. S. 60-946. The answer under R. S. 60-945 is complete in itself, and the answer under the succeeding section is only when answer is not made under the former section or the garnishee is in doubt or where third parties may be claiming an interest. No such conditions are here pointed out.

Appellees direct the attention of the court to the language in several of the sections of the garnishment statute, particularly, R. S. 60-940, 60-941, 60-946, 60-951, 60-953 and 60-954, directing our especial attention to the language of them with reference to contingent liability, that the judgment shall be just to all parties and properly protect their respective interests. As to R. S. 60-941, if it should be held to apply to an action wherein the garnishee is the defendant, it seems to be limited in actions for damages to cases where such are "founded upon contracts, express or implied."

The case of *M'Donald v. Carney,* 8 Kan. 20, is cited by appellees as among the first Kansas cases where more than one action was involved, there being three actions concerned in the matter. The party garnisheed answered as a defense in one of the actions that he had been garnisheed in another action concerning the same matter, and the court held:

". . . that said answer set up facts sufficient to constitute a defense for the time being, and that the action of the court in overruling the demurrer was not erroneous." (Syl.)

In the case of *Keith v. Harris,* 9 Kan. 386, it was held:

"A judgment debtor may be held as garnishee of the judgment creditor in favor of a creditor of the judgment creditor, where the two actions are in the same court." (Syl. ¶ 1.)

In the case of *Bumgardner v. Halverstadt,* 115 Kan. 124, 222 Pac. 126, it was held:

"A debtor against whom a money judgment has been rendered by one district court, may be garnished in an action against the creditor commenced in another district court." (Syl. ¶ 1.)

In this opinion the case cited just above, was fully considered and treated, and the additional matter involved was mainly the fact that the cases were pending in two different courts, and in that connection the effort was to protect the garnishee from double liability, but in both of these cases the judgment debtors were held subject to garnishment.

Appellees contend that the action of Barnett against the petroleum corporation was upon a contingent liability and therefore

subject to garnishment at any time action was commenced, and was authorized by statute and also by the decisions of this court, citing *Bank v. Dondelinger*, 103 Kan. 444, 175 Pac. 109; *Winterscheidt v. Wilson*, 110 Kan. 649, 205 Pac. 600; and *Anderson v. Dugger*, 130 Kan. 153, 285 Pac. 546. There can be no question about a contingent liability being subject to garnishment, or the person being properly garnished who has in his possession, or under his control, property or money owing by him to the judgment debtor, whether due or not; as in the first case above cited, it was on nonnegotiable promissory notes not yet due, but payable upon the happening of a certain contingency. The second one above cited involved the garnishment of the balance due on the purchase of real estate depending on the contingency as to time, and otherwise upon the completion of the contract of purchase and the perfection of the title. The third case was concerning a garnishment of the balance of the purchase price of a pool hall.

Much is said in the brief of appellees about equity, fairness between parties, and justice, as is definitely mentioned in the statutes on garnishment, but that does not mean nor infer that the courts must go beyond the provisions of the statutes to do justice. The garnishment statutes themselves prescribe certain exemptions which, generally speaking, might in some instances work gross injustice. Among other limitations are contingent liabilities and the extent a garnishment will bind what might be a running obligation, such as a monthly rental. These limitations and restrictions must be considered in the light of the construction and meaning that has been heretofore given and applied to them, regardless of the apparent discrimination in the results.

Garnishment is in effect a formal judicial assignment of such actual property, money and credits as would be capable of being voluntarily assigned. The following language was used in the case of *Hall v. Terra Cotta Co.*, 97 Kan. 103, 154 Pac. 238:

"Where a defendant corporation assigned to a bank the proceeds of a contract due and to become due for furnishing materials and labor to a building contractor, such assignment is valid as against a garnishment of the funds in the hands of the building contractor." (Syl. ¶ 1.)

In the case of *Ives v. Addison*, 39 Kan. 172, 17 Pac. 797, it was said:

". . . the assignment of the judgment to A. transferred all interest therein of F. to A., and the credit could not thereafter be garnished or appropriated

by the creditor of F." Syl. (See, also, *Bridgeport Machine Co. v. Early,* 133 Kan. 137, 298 Pac. 796.)

Could Barnett or his guardian have assigned this claim of his against the petroleum corporation to another who could have prosecuted it to judgment? We think it was not such a liability, contingent or otherwise, as was contemplated by the garnishment statute. After he or his guardian had procured a judgment, it was then capable of assignment. Before that it was not really a liability. It was not something due or to become due on contract. Even a verdict of the jury in a damage case for negligence is not a debt, as our own court held long ago in *Stauffer v. Remick,* 37 Kan. 454, 15 Pac. 584, in the second paragraph of the syllabus.

"A verdict in an action in tort does not convert the tort into a debt; it does not become a debt until it is merged into a judgment." (See, also, *Hutchinson v. Nelson,* 63 Kan. 327, 65 Pac. 670.)

In line with these Kansas decisions we find plenty of text to the same effect. In 28 C. J., at page 243, it was said:

"The garnishable character of the debt or property involved, the inception of the lien or right, and the liability of the trustee or garnishee are, under the statutes, ordinarily determined as of the time of the service of the writ, or even of its issuance, and the garnishee or trustee will be held only for debts then owing or property then in his hands."

"An unliquidated claim for damages for tort is not subject to garnishment, even in equity. . . . A verdict for damages for a tort does not render the claim subject to garnishment. The same is true where the case has been defaulted and stands for assessment of damages." (28 C. J. 137.)

Appellees with all earnestness insist that "this is not an ordinary action of a claim by the plaintiff against the defendant founded upon a tort and in which the plaintiff is trying to use the ancillary remedy of garnishment," but is one covered by the following quotation from the next succeeding page of 28 C. J. after that above quoted:

"The effect of the pendency of other and prior proceedings concerning or affecting the property sought to be reached by garnishment resolves itself into a number of more specific questions, such as the effect of the property being in *custodia legis,* the effect of a prior action by defendant against the garnishee, or of prior garnishee process by a third person against the same garnishee. The converse of the matters here considered is the effect of garnishment upon other proceedings against defendant.

"The fact that a claim sought to be reached by garnishment is in suit in a pending action by defendant against the garnishee will not of itself exempt

the claim from garnishment. Certainly, it is held, a prior action on a claim will not prevent its garnishment in the same court." (p. 138.)

We fail to see the distinct application of the quoted text to the case at bar except the clause near the close thereof, that "the fact that a claim sought to be reached by garnishment is in suit in a pending action by defendant against the garnishee will not of itself exempt the claim from garnishment." This is applicable and must be readily admitted, as many of the decisions heretofore cited show, so that if the guardian for Barnett was in a suit against the petroleum corporation to recover on a note, or even on a contingent liability, that fact alone would not of itself exempt the petroleum corporation against garnishment by the plaintiffs. But here we have neither property, note, debt, credit nor contingent liability, but only a claim for damages for a tort—the alleged negligence of the garnishee. Along the same line as the text in Corpus Juris is the following statement in 12 R. C. L. 797:

"The controlling characteristic of the remedy by garnishment is, that the liability of the garnishee must originate in, and be dependent on, contract. Hence, with the exception of conveyances, transfers, or agreements to defraud creditors, garnishment cannot be employed to reach or subject any debt or demand, which the debtor, suing in his own name, could not recover in an action *ex contractu*. A right of action for a tort is not, therefore, the subject of garnishment in most jurisdictions. A claim in tort, not reduced to judgment, is not a debt within the meaning of the statutes in reference to garnishment."

In 3 Bancroft's Code Practice and Remedies, page 3327, it is said:

"A claim or demand of the defendant, if unliquidated or based upon tort, is not subject to garnishment. Otherwise expressed, the wrongdoer is not chargeable as garnishee. After the claim has been reduced to a fixed sum by final judgment, it may be garnished; but, until judgment has been obtained against the wrongdoer, the demand is not garnishable."

In the case of *Fernald v. Johnson*, 71 Maine 437, the court distinguished between a contingent liability and a contingency, as follows:

"A contingent liability is one thing, a contingency, the happening of which may bring into existence a liability, is another, and a very different thing. In the former case there is a liability which will become absolute upon the happening of a certain event; in the latter there is none until the event happens. The difference is simply that which exists between a conditional debt or liability, and none at all." (p. 440.)

In the case of *Nelson v. Stull*, 65 Kan. 585, 70 Pac. 590, it was stated that the laws of Kansas relative to garnishment were taken

substantially from the statutes of Wisconsin, and for that reason the decisions of that state on questions of garnishment prior to the enactment of our garnishment laws in 1889 are entitled to more weight in this state than decisions from other states. In the case of *St. Joseph Mfg. Co. v. Miller and others*, 69 Wis. 389, decided by the supreme court of that state in 1887, it was held:

"If, on appeal by a railroad company from a judgment against it for personal injuries, upon which it has been garnished by a creditor of the plaintiff, such judgment is reversed, and such creditor perfects his judgment against the plaintiff before the latter recovers another and final judgment against the company, the latter judgment is, under sec. 2769, R. S., not subject to nor affected by the garnishment." (Syl.)

In *Rose v. Vertin*, 46 Mich. 459, it was held:

"A recovery for libel does not furnish an indebtedness which can be garnished until judgment is entered on the verdict." (Syl.)

In the case of *Dibrell v. Neely*, 61 Miss. 218, it was held:

"Until final judgment in a suit for damages, the defendant is not the plaintiff's debtor liable to garnishment, and may, at the term at which judgment is rendered, defeat the garnishing creditor, by paying an agreed sum to obtain a new trial and extinguish the demand for damages." (Syl.)

We conclude that the claim of Barnett against the Shell Petroleum Corporation for damages for its negligence was neither a debt nor a contingent liability, and therefore, under the statutes and decisions of this state, was not subject to garnishment prior to the time it was reduced to a judgment, and the correspondence about holding the garnishee matter in abeyance could not hold or carry the force and effect of the garnishment summons over until the time of the judgment without the rights of one of the parties being waived, which, by the correspondence, it was not to do. The judgment must therefore be reversed with directions to render judgment for the garnishee for costs. It is so ordered.